IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-779-FL

| | |
|---|---|
| ANTHONY TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings. (DE 23, 27). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants plaintiff's motion, denies defendant's motion, and remands the matter to defendant pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**BACKGROUND**

Plaintiff protectively filed concurrent applications for supplemental security income and disability insurance benefits on July 22, 2009, alleging disability beginning March 1, 2007. This application was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated July 28, 2011. On October 15, 2012, the Appeals Council denied plaintiff's request for review of the ALJ decision, and plaintiff filed this action on December 6, 2012, for review of the final decision of the Commissioner.

**DISCUSSION**

A. Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).[1] The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In this matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment. At step two, the ALJ found that plaintiff had the

---

[1] The five step analysis applies to both supplemental security income and disability insurance benefits. Compare 20 C.F.R. Part 404 subpart P with id. Part 416 subpart I. For simplicity, only 20 C.F.R. Part 404, which governs disability insurance benefits, is cited herein.

2

following severe impairments: lumbar and cervical spine degenerative disc disease, obesity, degenerative joint disease of the right knee, post-traumatic stress disorder, and finger injury. However, at step three, the ALJ further determined that plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: (1) ability to alternate between sitting and standing every 30 minutes ("sit/stand option"); (2) no more than occasional postural activities; (3) no constant use of the left upper extremity; and (4) work limited to simple, routine, repetitive tasks with no more than occasional interaction with others. The ALJ determined that plaintiff could not perform his past relevant work, but that plaintiff could adjust to the demands of other employment opportunities existing in significant numbers in the national economy, based upon testimony of a vocational expert (VE). Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

B. Analysis

Plaintiff raises five assignments of error in his motion. First, plaintiff argues that the ALJ erred in omitting material facts regarding plaintiff's mental impairment. Second, plaintiff maintains that the ALJ impermissibly made a mental RFC finding without obtaining either an RFC assessment from a medical expert or additional information from plaintiff's treating physician. Third, plaintiff argues that the ALJ failed to mention plaintiff's borderline intellectual functioning. Fourth, plaintiff contends that the ALJ erred in failing to inquire regarding the conflict between the DOT and the VE's testimony regarding sit/stand options. Fifth, plaintiff asserts that the ALJ should have conducted a function-by-function analysis.

3

1. Omission of facts regarding mental impairment

Plaintiff argues that the ALJ failed to discuss probative facts regarding plaintiff's mental impairment. In particular, plaintiff argues that the ALJ failed to discuss records regarding plaintiff's June 2011 hospitalization for major depressive disorder, at which time plaintiff was assigned Global Assessment of Functioning Score ("GAF") of 30.[2] Plaintiff notes the ALJ does not mention the GAF score, or anything other than the fact that plaintiff was hospitalized. (Tr. 36-37). In addition, plaintiff notes that although the ALJ characterizes additional March 2010 treatment notes as reporting "improvement in symptoms," he neglects to mention that plaintiff was assigned GAF score of 46 as of that date.[3] For its part, defendant argues that the ALJ's failure to discuss the GAF score does not constitute error, and that any error in failing to elucidate the details of the hospitalization is harmless.

An ALJ must consider "all relevant and available clinical signs and laboratory findings" in assessing a claimant's functional limitation. 20 C.F.R. § 404.1520a(c)(1). An ALJ has discretion to reject GAF scores in favor of other evidence, where, for example, the medical records include limited information about the basis of those scores or how they limit Plaintiff's ability to function at work. See Hunter v. Colvin, No. 1:10-cv-401, 2013 WL 2122575, at *7 (M.D.N.C. May 15, 2013); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (stating that the GAF scale "does not have a direct

---

[2] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50. AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2002) ("DSM-IV"). The GAF score description has two components: symptom severity and level of functioning: "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." Id. at 32-33. A GAF score of 21-30 is indicative of "[b]ehavior . . . considerably influenced by delusions or hallucinations [or] serious impairment in communication or judgment . . . [or] inability to function in almost all areas." Id.

[3] A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] any serious impairment in social, occupational, or school functioning." Id. at 34.

4

correlation to the severity requirements in our mental disorders listings"). Nonetheless, an ALJ also has a duty to explain the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997) (stating that a court cannot conduct substantial evidence review unless ALJ has considered all relevant evidence and sufficiently explained the weight given to probative evidence); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

A GAF score is relevant evidence of a claimant's degree of functioning, which "must be considered along with all the other relevant evidence of record." Atkinson v. Astrue, No. 5:10-cv-298-FL, 2011 WL 3664346, at *11 (E.D.N.C. Jul. 20, 2011) (quotation omitted); Melvin v. Astrue, No. 7:11-cv-131-FL, 2012 WL 4447617, at *5 (E.D.N.C. Jul. 3, 2012) (recognizing rule, but rejecting plaintiff's argument because ALJ explicitly "took note" of GAF scores); see also Pate-Fires v. Astrue, 564 F.3d 935, 944 (8th Cir. 2009) (collecting cases finding that a GAF score below 50 can evidence substantial impairment of an individual's ability to work); Irizarry v. Barnhart, 233 F. App'x 189, 192 (3d Cir. 2007) (holding that an ALJ decision was not supported by substantial evidence where ALJ failed to mention relevant probative evidence in the form of two GAF scores).

Here, the ALJ failed to address plaintiff's GAF scores in his decision. Instead, he characterized treatment notes assessing plaintiff with a GAF of 46—i.e., "serious symptoms . . . [or] serious impairment in social, occupational, or school functioning"—as evidence of "improvement" without mention of the score, which provides conflicting evidence that plaintiff still suffered some degree of impairment. (Tr. 36). The fact that plaintiff reported improvement in symptoms as of March 2010 demonstrates only the state of plaintiff's condition relative to his earlier symptoms, but

5

says nothing of the severity of his symptoms overall. In addition, the records in which plaintiff's later GAF score of 30 is reported — suggesting "serious impairment in communication or judgment . . . [or] inability to function in almost all areas" — are described by the ALJ, without more, as plaintiff's hospitalization "after complaining of severe depressive and anxious symptoms." (Tr. 37). This is an insufficient explanation of evidence weighing against the ALJ decision to enable meaningful review.

In sum, plaintiff's GAF scores and records of hospitalization provide probative evidence contradicting the ALJ's conclusion, yet the decision does not include the ALJ's reasons for rejecting this evidence. Without a sufficient explanation of the weight given to obviously probative exhibits, it is not possible to determine if the ALJ's decision is supported by substantial evidence. See Arnold v. Secretary of Health, Ed. and Welfare, 567 F.2d 258, 259 (4th Cir. 1977); DeLoatche, 715 F.2d at 150 ("It may be, of course . . . that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record [the court] cannot so determine."). For this reason, remand is warranted. See Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) ("[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision."). Plaintiff's remaining assignments of error nonetheless are addressed below.

    2. Failure to obtain medical expert opinion as to mental functional analysis

Plaintiff argues that the ALJ was required to further develop the record when faced with a psychiatric review technique form that deemed the evidence in plaintiff's file to be inconclusive. In particular, Dr. Salmony, who filled out the Psychiatric Review Technique form on September 8, 2010, concluded that there was insufficient evidence to complete the assessment, including the

6

portion assessing functional limitations in daily living, social functioning, and concentration. (Tr. 405, 415).

While an ALJ has a duty to develop the record when necessary for a disability determination, this does not displace the plaintiff's burden of proof at steps one through four. See 20 C.F.R. § 404.1512(c). While his case was pending, plaintiff twice failed to appear for consultative examinations that would have provided additional evidence for review, and nothing in the record suggests that there was good cause for his failure to appear. (Tr. 417).

The SSA arranges for consultative examinations at its own expense, id. § 404.1512(e), and if a claimant fails or refuses to take part in such an examination that has been arranged "to get information [the SSA] need[s] to determine [the claimant's] disability," the SSA may find that the claimant is not disabled. Id. § 404.1518(a). Thus, absent good cause for a failure to appear, a "lack of cooperation" in working with consultative examiners can be "detrimental" to a plaintiff's claim. Boyd v. Schweiker, 525 F. Supp. 123, 127 (E.D.N.C. 1981); accord Proffitt v. Colvin, 7:13-CV-179, 2013 WL 6044420, at *4 (W.D. Va. Nov. 14, 2013) ("The court believes that plaintiff's failure to participate in these examinations diminishes his arguments regarding the evidence which is before the court.").

Moreover, an ALJ is not required to obtain an expert medical opinion before making an RFC assessment. Felton-Miller v. Astrue, 459 F. App'x 226, 231 (4th Cir. 2011) (holding that the ALJ "properly based his RFC finding on [the claimant's] subjective complaints, the objective medical evidence, and the opinions of treating, examining, and nonexamining physicians"); accord Broussard v. Colvin, 5:12-CV-398-FL, 2013 WL 5370592, at *3 (E.D.N.C. Sept. 24, 2013) ("Where the ALJ

assessed plaintiff's mental RFC in accordance with the regulations, failure to complete an RFC assessment form does not require remand.").

In short, plaintiff cannot be heard to complain that the record lacks a mental RFC assessment when the absence of any such assessment is due to his own absenteeism. Plaintiff's second assignment of error is therefore rejected.

3. Failure to mention borderline intellectual functioning

Plaintiff contends that the ALJ's failure to explicitly mention borderline intellectual functioning in the decision or VE hypothetical was in error. DE-24 at 4. Plaintiff relies upon a January 13, 2010 psychological evaluation, during which Plaintiff scored a composite IQ of 79 on the Kaufman Brief Intelligence test, i.e. "within the borderline range [of intelligence]." Tr. 301-303. As Defendant points out, the psychometric testing performed at the appointment has questionable probative value. The evaluator noted that plaintiff's cooperation and motivation were "limited" but that plaintiff "put forth an adequate effort." Tr. 301. The evaluator also commented, however, that plaintiff's responses on a DSM-IV Axis II checklist were of "questionable validity" and opined that plaintiff had "intentionally attempted to present an excessively negative clinical impression of himself." Tr. 302.

In this case, even crediting plaintiff's assertion that he has borderline intelligence, this impairment is accounted for in the ALJ's VE hypothetical and RFC by virtue of the limitation to simple, routine, repetitive tasks. See Parker v. Astrue, 792 F. Supp. 2d 886, 896 (E.D.N.C. 2011) (citing Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) ("[T]he ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures

8

. . . borderline intellectual functioning.")). Accordingly, even if the ALJ had erred in omitting this information, this error was harmless. Thus, this assignment of error is rejected.

    4. VE's identification of jobs allowing sit/stand limitations.

Plaintiff argues that the VE's testimony that sit/stand options were available conflicted with the DOT, and that the ALJ was therefore obligated to elicit testimony to explain the conflict. Defendant responds that because the DOT is silent as to sit/stand options, no conflict exists between the VE's testimony and the DOT. Defendant also points out that the ALJ acknowledged that the DOT does not address whether a job has a sit/stand option, but relied upon the VE's experience.

Social Security Ruling 00-4p requires that before an ALJ can rely on VE evidence, the ALJ must inquire on the record whether the testimony is consistent with the DOT, and that if "there is an apparent unresolved conflict . . . the [ALJ] must elicit a reasonable explanation for the conflict," and explain in his decision how the conflict was resolved. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000) (emphasis added). As recognized in SSR 00-4p, however, a conflict between the DOT and VE testimony does not compel the conclusion that the testimony is inaccurate: "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," and the VE therefore "may be able to provide more specific information about jobs or occupations than the DOT." Id. at *3; accord Cline v. Chater, No. 95-2076, 1996 WL 189021, at *4 (4th Cir. April 19, 1996).[4] A reasonable explanation for any purported inconsistency may therefore be present in the record. See, e.g., Ricks v. Astrue,

---

[4] For this reason, Plaintiff's argument that the maxim "*expressio unius est exclusio alterius*" should be applied in this context is unpersuasive. While the maxim has been used in some cases for statutory or contractual interpretation, where consideration of the intent of the author(s) in intentionally excluding mention of an item may be warranted, the DOT is a vocational guidebook that is not intended to be prescriptive. As such, courts routinely rely upon VE testimony to supplement its contents. See, e.g., Cline, 1996 WL 189021, at *4.

9

No. 2:09-cv-622, 2010 WL 6621693, at *16 (E.D. Va. Dec. 29, 2010) (remanding but commenting upon the absence of either a "reasonable explanation for the conflict" or "specific vocational evidence to suggest" that the specific positions cited by the VE differed from the DOT descriptions).

Here, the ALJ acknowledged in his opinion that the sit/stand option is not addressed in the DOT, but found that the VE's testimony was reliable based upon her "extensive experience placing individuals into jobs while accounting for this limitation." (Tr. 39). This serves to satisfy the burden under step five. See Hagans v. Colvin, 4:12-CV-134-FL, 2013 WL 5424604, at *11 (E.D.N.C. Sept. 26, 2013); Lusk v. Astrue, 1:11-cv-196, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) (because DOT is silent as to the availability of a sit/stand option, it was proper for the ALJ to use VE testimony to supplement DOT job descriptions). Accordingly, this assignment of error is rejected.

5. Failure to conduct "function by function" analysis

Plaintiff contends that the ALJ erred by not making specific findings regarding plaintiff's ability to lift, carry, push, and pull, along with not specifying how long plaintiff can stand and walk in a day. This court previously has held that "[t]o the extent that the ALJ did not explicitly mention each function, he was not required to do so." Douglas v. Astrue, 2:11-CV-37-D, 2012 WL 3283431, at *4 (E.D.N.C. Aug. 10, 2012); accord Broussard, 2013 WL 5370592, at *3 (stating that an ALJ is not required to produce "a true 'function by function' analysis"). Here, with the exception of the GAF evidence discussed above, the ALJ adequately discussed the evidence that supported his RFC. See Burns v. Astrue, 5:11-CV-737-D, 2012 WL 6645002, at *4 (E.D.N.C. Dec. 20, 2012). Thus, this assignment of error is rejected.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion for judgment on the pleadings (DE 23), DENIES defendant's motion for judgment on the pleadings (DE 27) and remands the matter to defendant pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing directives. The clerk of court is directed to close the case.

SO ORDERED, this the 25th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

11

Case 5:12-cv-00779-FL   Document 30   Filed 03/25/14   Page 11 of 11